**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0123n.06

Case No. 19-1499

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Feb 27, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | )<br>) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| ALLEN DEAN GORDON CLAYBORN aka Allen Meme, | )<br>)<br>) | |
|     Defendant-Appellant. | )<br>) | |

BEFORE: MERRITT, THAPAR, and LARSEN, Circuit Judges.

THAPAR, Circuit Judge. Allen Clayborn tricked charity groups into thinking he represented world-famous singer Mariah Carey. He told them that, for a hefty fee, Mariah Carey would perform a benefit concert on their behalf. Clayborn went to great lengths to make the scheme work. He created fake email accounts, bogus signatures, and false identification. And it worked—at least at first. Clayborn got tens of thousands of dollars from unwitting charities. But when the lies caught up to him, Clayborn pled guilty to wire fraud and aggravated identity theft.

Now, Clayborn argues that the district court clearly erred when it found that: (1) his actions caused the charities substantial financial hardship, and (2) he took a leadership role in the scheme. Since neither of Clayborn's arguments prevail, we affirm.

*Financial hardship.* The district court enhanced Clayborn's sentence because it believed he caused substantial financial hardship to his victims. *See* U.S. Sentencing Guidelines Manual § 2B1.1(b)(2) (U.S. Sentencing Comm'n 2018). It based its decision in part on statements from

the victims.  For example, one of the charities that Clayborn targeted said it had "zero dollars in the bank" after falling for the scheme. What's more, the botched concert caused serious and long-term reputational harm. The group lost sponsors and continues to try to repair its relationships in the community.  Another charity reported that it lost $100,000—twice the amount it had in funds at the time—and now faces possible bankruptcy.

Clayborn claims the victim impact statements from the charity groups are not credible.  He points to one group's website, which still lists sponsors that the group said it lost.  He also cites the fact that the groups donated thousands of dollars in scholarships and grants over the last several years.

There are a couple of problems with those points.  First, Clayborn simply assumes that the group would remove a sponsor from its website once the sponsor stops contributing.  It's just as reasonable to assume that the group would leave historic sponsors on the website or might be delayed in updating the website.  So that doesn't tell us much.  Second, Clayborn's financial data showing that the group gave out significant scholarships and grants span several years before the scheme.  Obviously, the fact that the groups gave out significant scholarships *before* they were defrauded does not tell us anything about how they suffered *after* the fraud.

In all, neither of Clayborn's arguments cast enough doubt on the victims' statements that the district court can be said to have clearly erred.  True, a reasonable person could draw different conclusions from this evidence, as is often the case.  But we trust district courts to make just these kinds of judgment calls.  After all, credibility determinations are the bread and butter of district courts and appellate courts are wise to defer to their judgment.  *See United States v. Sheron*, 787 F. App'x 332, 333 (6th Cir. 2019).

*Leadership.* The district court enhanced Clayborn's sentence because it believed he played a leadership role in the fraud. *See* U.S.S.G. § 3B1.1(c). The district court found that to be the case here, and the record evidence supports that decision.

Clayborn created the scheme. Then, he set up all the false email addresses it used. And he was the face of the operation throughout. Clayborn only later let his roommate join so that they could use the roommate's bank account. These facts, taken together, show that the district court had a solid basis for concluding that Clayborn played a leadership role. *See* U.S.S.G. § 3B1.1 cmt. nn. 2, 4 (listing relevant factors). Thus, the district court did not err.

We affirm.